Good morning, Your Honors. Ryan stood on behalf of Appellant Rayshon Thomas. The court should vacate Mr. Thomas's revocation sentence because the information and the evidence relied on to find him in violation of Allegation 4 violated Mr. Thomas's due process rights because the government did not provide witness testimony for the substance of the allegations for Allegation No. 4. This court's decision in Comito and its application in Hall and Lundy compelled reversal in this case. There were five charged violations, right, and there were three, and all of them were Schedule C or something, and this is one of the five. Does it matter? It does, and I'm glad the court asked this question. I would like to answer this question with four citations, the excerpts of record that I think conclusively show that violation of Allegation 4 drove the above guideline sentence. First, at ER 174, the probation officer, Ms. Devine, filed an amended order to show cause which included Allegation 4, and because of that, she recommended a higher punitive sanction of 16 months compared to her prior recommendation of 13 months. Second, at ER 104, at the sentencing hearing, after finding Mr. Thomas in violation, the same probation officer, Ms. Devine, argued compellingly to the district court that breaking and entering the window of the residence is violent and traumatizing for the children. Again, that's page 104. Third citation would be from Assistant United States Attorney, Mr. Thacker, who represented the government below. He said, quote, I agree with Ms. Devine that that is a violent indication, breaking through the kid's window and scaring him. That's page 109, and the fourth and final citation would be to the district court adopting these arguments. At page 113 and 112 of the excerpts of record, the district court said, quote, I agree with the probation officer's analysis here is right on, and I think her recommendations are reasonable. They're scared to death. They're hiding in the bedroom. You said to the district court, or I don't know if it was you. It was. Thank you. If the court sustains this objection, as the court already noted, they're all grade C allegations. It doesn't meaningfully impact the guidelines. Correct. It doesn't change the guidelines, and that's absolutely right. The guidelines were 7 to 13 months. The question is what sentence is appropriate. So is it your view that children have to come in and testify in these circumstances if the government doesn't show unavailability? Well, the law applies to all witnesses. Is it your view that in these kind of proceedings, the court has no discretion? If the government can't show unavailability, it has to have the children come in? No, I disagree with that reading of the law. I think. I'm asking what your position is. My position is not absolutist, and so the court must not in all circumstances require minor witnesses to be present, nor is. Did you ever argue to the court that there was any particular reason that these statements to the police officers by the kids were unreliable? Well, I objected strongly and provided a number of bases. I understand you objected, but did you ever give the court any reason why these particular statements by these children were unreliable? Your Honor, I believe that my objection, if I can recall it, was focused on, I mean, there's a number of facial arguments that we can make with respect to stepchildren testifying against a stepparent who perhaps. But that's not my question. My question is, did you ever give the judge any reason why these statements by these children weren't reliable? Your Honor, I don't believe so, nor do I. Did you ever suggest to the district court that these statements were untrue? Yes. And what did you tell the judge other than they're untrue? Did you give him any reason why they're untrue? No. Did you tell the judge what the true facts were? Your Honor, I don't believe that I proffered an alternative theory, nor do I believe that I'm required to do so under a commutal. I'm not saying whether you're required to do so or not. I'm asking if you did. Okay. No, I don't believe that I did. Did you ever suggest your client wasn't there? Yes. We contested the allegations. We had both the preliminary hearing to contest the probable cause for the allegations, including Allegation 4, as well as a contested revocation hearing. Where it is the government's burden to prove by a preponderance. So, yes, I believe that... I mean, what's unusual about this case is that there is, in a sense, some corroboration of a testimony in the sense that similar things had happened several times before. Many times before, apparently. Well, I would agree with your first explanation of several times before, perhaps. But, you know, nonetheless, I don't believe that that's necessarily corroboration of what M-1 and M-2 allegedly said to the police. I would turn the court to the actual testimony instead of the summary of the police report provided by Officer Devine. I would look specifically at ER 71 and 72. Only one of the minor children, through Officer Gardner's testimony, said that they were scared and hid in the bedroom. The government did not inquire about the other. And then, you know, Judge Bennett, if I could perhaps gently push back on the nature of your questioning with respect to what my obligation was in presenting it to the district court, I would look... I would turn the court to ER 74. And in our cross-examination of Officer Gardner, the police officer who was the conduit for the hearsay statements of M-1 and M-2, we sought to inquire of Officer Gardner about physical indicia of reliability of M-1 and M-2 statements, that they were scared. And the government objected on relevance grounds, and the district court sustained it. And so, you know, we sought through cross-examination to try to better understand the nature of the fear that Officer Gardner was relaying. I'm sorry, you're talking about ER 74? Correct. I see here, did you see any indication of physical injury to either of those individuals? Sure. And that would have been the start of our questioning about, was there any indication... I didn't see a question about were they really scared by the stepdad who had strangled the mother breaking in. Well, I think that respectfully, I think the answer could have been, I saw them trembling. I saw, you know, a police officer could say, I saw the children were white-faced. I saw that there was, you know, some other indication of fear or injury. We didn't... But you asked about physical injury. That's the question the judge sustained the objection to. That's correct. And there was no allegation he beat up the children, right? That's correct. What about whether this was an excited utterance? I appreciate the court's question on that ground as well. The government, in its answering brief, argues that this was an excited utterance because there was a nine-minute delay, or despite, I should say, the fact that there was a nine-minute delay between when the officers were dispatched and when they arrived. The record is less clear on how long it took the minor children to contact the police, as well as how long it took the police to dispatch an officer. So in the absolute best case scenario for the government, there was only a nine-minute delay. There was no finding that it was an excited utterance by the district court below. And as far as I can tell, in this court's case law, there's a similar upholding of an excited utterance in this context. And the government, apart from citing the federal rule of evidence, hasn't provided an analogous case. I just simply don't think that this is... It might have been, but it wasn't. There was no finding by the district court. That's right. The district court found that it was reliable, sufficiently reliable under Comito, but didn't independently find that it was an excited utterance, didn't make a factual finding on that specific point. I see that I've gone over. I would like to reserve the remainder of my time for rebuttal if that's possible. Fine. We'll give you two minutes. I appreciate you. Thank you. Good morning. May it please the Court? Zach Alford, the United States. Judge Berzon, let me start with your very first question. I think you were right to note that there are four other allegations of the very same grade, and that means that regardless of this allegation, supervised release was going to be revoked and there was going to be the very same sentencing guidelines range. So the question of Comito balancing is actually academic here because that only goes to the merits of the revocation. The question this Court has to look to is the consideration of the information at sentencing, and that's a question of substantive reliability and procedural reliability under the Franklin case, the Vanderwerff-Horst case, and others. Now, in that context, this Court, Judge Bennett, to your question, very much does place the burden on the defendant to show unreliability, at least substantive unreliability. There is an exception if you're dealing with accomplice statements or co-defendant statements, but we don't have that here. Because as I understand it, your friend is not saying that the defendant wouldn't have been revoked. The sentence would have been different. That's correct, and that's why I say just to set the stage what bucket we're actually in. We're purely in the sentencing bucket. Because this sort of hearsay comes in a lot at sentencing. That's right, and the burden has always been with the defendant outside the context of accomplice statements, which we're not dealing with. This Court said that expressly in Franklin. It said that expressly in Vanderwerff-Horst. It not only doesn't go to whether they'd be revoked, but it also doesn't go to the guidelines range either. That's correct, because they're all grade C allegations. It would be a different situation if this was a grade B or something else. We're just not in that land. Now, even if you were to place the burden on us to show reliability here, this evidence was reliable, and I think it goes beyond just the question of whether this was an excited utterance or not. We do think it's an excited utterance, even if it's nine minutes removed from the situation. But the fact that there was no finding does seem, since that's an evidentiary question for the District Court, makes it difficult for us to make that determination in the first instance. Your Honor, this Court, when it's dealing with hearsay admitted at sentencing, still analyzes whether it was properly admitted as reliable, even if the District Court didn't make an expression. I'm not talking about reliable. That's an excited utterance. If we were going to decide whether it was an excited utterance with an exception to hearsay, we couldn't do that. I think you could, because this Court will still analyze reliability of hearsay at sentencing, even when the District Court doesn't do that. It did that in the Berry case, for example. I think it could do that here. But again, you can set aside the excited utterance, and I think you still have independent evidence that this was a reliable identification. Let me start with the fact that this same stepdaughter's identification of Thomas was in fact confirmed by extrinsic evidence at the hearing. What I'm referring to here is not the June 9th allegation, which was contested, but the June 23rd allegation, which is uncontested here. If you recall what happened there, the stepdaughter said that Thomas was in the house, and then the officer who testified actually witnessed him come out of the house. So that officer confirmed that the stepdaughter had accurately identified Thomas on another occasion that's not at issue here. That is strong corroboration of the fact that the stepdaughter accurately identified the defendant on the June 9th occasion that is contested. Now you can add to that the point that you made, Judge Berzon, that this conduct by Thomas predates the June 9th event and it postdates the June 9th event. There were proven allegations from May 23rd and June 23rd that Thomas had violated this restraining order, and on the June 23rd occasion he did so by actually going into the house. It would be an extraordinary coincidence if wedged right in between those instances someone else had in fact broken into the house. So I think that's corroboration. As I understand, although they to some degree are contesting whether he was there, more than that they are contesting whether it was reliable as to exactly what happened, i.e. he came through the window and they were scared and they went into the bedroom and so on. Your Honor, I think the fact that the identification was confirmed on another occasion as well as the prior similar instances all help corroborate that. And one additional piece I'll point you to that corroborates the window incident in particular is that Thomas's prior revocation was for violating the order by coming through a window. You can look at page 183 of the record where it recounts this prior violation for which he was revoked. And you can also just see it on the district court docket. It's docket number 160 and 162. And there was a fair amount of emphasis on the fact that the kids were scared, although why wouldn't they be scared? So I'm not sure exactly how important that is. And, Your Honor, that really didn't come so much from evidence as common sense. That's what the district court said. What's that? Well, I think that's what the district court said. But also it's the girl who called the police. That's right. But just to drive home this point, if you want to look at the page in the record that my friend on the other side cites, page 104, where probation actually gives their sentencing pitch, the reason he says that the children are afraid is he says, quote, I would be terrified if someone was coming through my bedroom window. So this is not really a fine parsing of the evidence. This is the common sense conclusion that anyone who has a grown man break through the window of their house is going to be afraid. So I don't think that's really an evidentiary point so much as a common sense point. Now, let me make one final point here, which is that even if you were to conclude that this evidence was wrongly considered at sentencing, I don't think it can be logically said that if the court had relied on Thomas's aggravated record and four grade C violations, it really would have given a different sentence than it would relying on his aggravated record and five grade C violations, particularly when two of the proven uncontested allegations involve violating that restraining order, and one involves him coming into the house. And I think the record reflects that. The court is concerned with the aggravated record. It says at page 107, 112, 113, 114 of the record that it's concerned about the, quote, aggravated record. Sometimes it mentions the troubling record, the quite aggravated record, the pretty aggravated record. So again and again and again, it's focusing on the aggravated record. And then it also mentions the fact that we've been here before. That's what the court says, and it says that a 10-month sentence, or excuse me, that a 16-month sentence is not that much more than a 10-month sentence that he got previously. So that's a concern about graduated punishment. And then at page 114, the court talks about drug and alcohol problems that Thomas has experienced. None of those concerns have anything to do with the June 9th allegations specifically. The only time the court actually mentions the June 9th conduct was to refute the notion that defense counsel had raised that this wasn't a violent encounter. The court's basically saying that in some sense it's violent because children would be afraid to have someone coming through their window. But at the end of the day, the court's not really relying on this evidence as the basis for its sentence. So just as in Vanderwerfhorst where the court refused to rely on offhand references made by a district court to conclude that that was the basis for the sentence, I think you can reach the very same conclusion here. So just to summarize, I think the court should conclude that the burden rests with Thomas to show unreliability and that he hasn't met that burden for the reasons, Judge Bennett, that you outline. Is he still in? Is he still in custody?  I believe so, but if he is, he's coming close to the end. I'm going to rely on Mr. Stitt to correct me there. I can ask your friend if he's still in. What's his projected release date? Yes, I should know that and don't, but I am confident Mr. Stitt will be able to tell you. But you should hold that the burden lies with Mr. Thomas. Even if you put the burden with us, I think there's independent evidence of substantive reliability. And then finally, I think any error was harmless because the district court really didn't rely on this allegation specifically. Thank you, counsel. Thank you. Your Honor, Mr. Thomas was released from custody about a week ago. Okay, thank you. Your Honor, I'd like to begin where the government left off. What is the consequence of that, if any? Well, the consequence is that he's out of custody. But the court should remand for resentencing without allegation four. And what? He's already out. That's correct. He's already out. What about his situation? Can he get another supervised release? He's still on supervised release for 12 months pursuant to the court's revocation. It's possible that the court would impose different factors for the supervised release and revocation. For example, some of the factors were with respect to drug treatment as well as how his supervision interlocks with the state court restraining order, where he has struggled for over a year to get marriage counseling under Medi-Cal but can't. And so the restraining order remains in place. I'd like to transition back. Is there any realistic possibility with regard to those things that this particular incident could matter? Yes, I think so. Again, I think that the four citations that I started with— Well, that tells you maybe, maybe, maybe something about the custodial sentence. But why does it tell you anything about anything else? Again, I think that the point that I perhaps disagree with Mr. Howe most strongly about is how important the allegations of— the facts of allegation four were for the sentencing. It drove the amended recommendation by Officer Devine to the government's presentation to the district court. Is it accurate that there was an earlier instance in which he came through the window? I believe it was as part of the prior sentence, but it's different in an important respect that the children weren't there. It was the children saying that they were frightened and terrified. It was Ms. Devine's belief that she, too, would have been scared, really identifying with the perceived fear, and then recommending the higher sentence, which all parties, apart from Mr. Thomas— Why is there—if he came through the window before and he came through again, that doesn't mean that he came through because the children were there. He just closed through a window. Sure. It also doesn't mean that the children were scared. And that sentencing factor, I think that the children— Children have lived in this atmosphere for a long time with these battling parents. One would be very surprised if they weren't scared. Well, I think that I would turn the Court to Ms. Devine's testimony that I sought to elicit at this revocation hearing, talking about how, you know, she views Mr. Thomas as, you know, not only her spouse, but someone she wants in her life. She believes— If he's sober. That's correct. And she contacted the police for the first allegation or two this time as well when he came to the door. And, you know, with respect to his drug treatment that he'd received, Officer Devine's statements were positive and encouraging in that respect. He was candid about a single drug use, seeking treatment. Again, more to this Court's review, I think that there were substantial other positive factors for Mr. Thomas that were dramatically outweighed by the impact to the children that the District Court perceived by Allegation 4 and that the appropriate remedy is to remand for resentencing. If I could just—I see that I'm out of time. If I could just make one final point on the hearsay point that I haven't yet addressed. Under Franklin, hearsay can be admitted at sentencing if the defendant has a meaningful opportunity to confront it. It can't be presented through mere mouthpieces, as the Court in Franklin said. That's what we have here. And in Vanderhost, if that's how we pronounce it, this Court upheld the hearsay because those statements were presented— they were multiple, independent, interlocking statements that were otherwise corroborated by the evidence. That is what is absent here. The fact that— You could have—I don't know if you did cross-examine the presenter. Well, she wasn't actually there, so you couldn't. No, that's right. And that's the challenge in talking to Officer Gardner about it. We can't impeach or really probe the statements because they're just through Officer Gardner. All right, I think we have your argument, counsel. I appreciate it. No, we thank both counsel for their arguments. The case just argued is submitted with that. We're in recess for 10 minutes. All rise. This Court stands in recess for 10 minutes.
judges: BERZON, BENNETT, SUNG